## In the District Court of the United States
## For the District of South Carolina

### BEAUFORT DIVISION

| | | |
|---|---|---|
| **Ronnie Muldrow, #235016,** | ) | |
| | ) | Civil Action No. 9:07-1315-TLW-GCK |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **Warden of Manning** | ) | **OF THE MAGISTRATE JUDGE** |
| **Correctional Institution,** | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## I.    INTRODUCTION

The Petitioner, Ronnie Muldrow ("Petitioner" or "Muldrow"), a state prisoner proceeding without the assistance of counsel, seeks *habeas corpus* relief under Title 28, United States Code, Section 2254.  By definition, the relief which she seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3).  Pursuant to the provisions of Title 28, United States Code Section 636(b)(1)(B) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C., this court has jurisdiction over the matter.  The above-named Respondent has filed a motion for summary judgment in this case [8], and therefore this Report is prepared for the District Court's review.

## II.    *PRO SE* PETITION

Petitioner is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of 28 U.S.C. § 1915,

28 U.S.C. § 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *and Cruz v. Beto*, 405 U.S. 319 (1972).  When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true.  *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir.1975).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).  Such is the case with the present Petition.

## III.    PROCEDURAL HISTORY IN STATE COURT

### A.  Proceedings in the Court of General Sessions

The Darlington County Grand Jury indicted Petitioner at the August 2004 term of court for trafficking in cocaine (04-GS-16-1827).[1]  Petitioner was represented by Richard Jones, Esquire on this charge.

On August 23, 2004, Petitioner pled guilty to second offense trafficking cocaine (28-100 grams), as the result of a negotiated sentence.  The Honorable Edward B. Cottingham sentenced him to seven (7) years imprisonment.  (App. p. 13).  Petitioner did not appeal his conviction or sentence.

### B.  Petitioner's Application for Post-Conviction Relief

On October 6, 2004, the Petitioner filed a *pro se* post-conviction relief ("PCR") application (2004-CP-16-863) (Tab #3), in which he alleged the following grounds for relief:

1.    Ineffective assistance of counsel-Attorney never filed a Motion for Discovery, et al..;
2.    Illegal sentence–Courts never advised me of my right to direct appeal; and
3.    Coerced in signing plea agreement–I was pressured by the D.A. (Solicitor) to sign [plea] agreement.

(App. p. 17)

Petitioner filed another *pro se* PCR Application (2004-CP-16-930) on October 29, 2004, in which he alleged ineffective assistance of counsel.  The State filed its Return on February 8, 2005.  (App. 22-27).

The Honorable James E. Lockemy merged the two PCR applications by an Order dated April 29, 2005, and ordered that the second application be considered as an amendment to the first.  (Tab #4)  The Honorable J. Michael Baxley held an evidentiary hearing into the

---

[1]    The Darlington County Grand Jury had originally indicted Petitioner "in 2003 for trafficking in crack cocaine, 28 grams to a hundred.  However, when [the Solicitor's Office] got the S.L.E.D. analysis back it came back as powder cocaine. ... So, [the Solicitor's Office] did a direct presentment and reindicted him on new indictment number."  App. p. 4, ll. 3-8.

matter on May 16, 2005, at the Darlington County Courthouse.  Petitioner was present at the

hearing and represented by Steven Mikell, Esquire.  Assistant Attorney General Karen C.

Ratigan represented the State.  Petitioner testified on his own behalf, while the State presented

the testimony of trial counsel, Mr. Jones.  (Tab #1, App. 28-62)

On July 7, 2005, Judge Baxley signed an Order Denying Post-Conviction Relief in

which he denied relief and dismissed the Application with prejudice.  The Order of Dismissal

addressed the merits of his claim of an involuntary guilty plea and the claims that trial counsel

was ineffective because he failed to (1) advise Petitioner of his right to appeal; and (2) file a

motion for a suppression hearing.  The Order refers to Petitioner's allegation that his sentence

is illegal because the trial court did not advise him of his right to appeal but only addresses

the allegation that counsel was ineffective for failing to advise him of his appellate rights.

(Tab #1, App. 63-69)

A timely notice of appeal was served and filed.  Assistant Appellate Defender Robert

M. Pachak, represented Petitioner in collateral appellate proceedings.  The State was

represented by Ms. Ratigan.  On January 27, 2006, Mr. Pachak filed a *Johnson* Petition for

Writ of Certiorari and a Petition to be Relieved as Counsel.[2]

The only question presented in the *Johnson* Petition for Writ of Certiorari was stated

as follows:

Whether Petitioner's guilty plea complied with the mandates set forth in Boykin v. Alabama?

Petition for Writ of Certiorari at p. 2.  The State filed a letter in lieu of a Return to the

*Johnson*

---

[2]   *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).  *Johnson* sets forth the procedures
for counsel to follow when filing meritless appeals in state PCR cases pursuant to *Anders
v. California*, 386 U.S. 738 (1967).  *Contra Pennsylvania v. Finley*, 481 U.S. 551 (1987)
(prisoner, who had no equal protection or due process right to appointed counsel in
post-conviction proceedings, also had no right to insist on Anders procedures for
withdrawal of appointed counsel when collateral counsel determined direct appeal was
frivolous).

Petition for Writ of Certiorari on January 30, 2006.  Petitioner filed a Pro Se Petition for Writ

of Certiorari on February 23, 2006, in which he presented the following issues:

> 1. Petitioner was subject to an unlawful detention and seizure of his person;
>
> 2. Fruit of the poisonous tree doctrine;
>
> 3. The unconstitutional conduct of the governmental officials involved;
>
> 4. The court's error; and
>
> 5. Ineffective assistance of counsel.

Pro Se Petition for Writ of Certiorari at p. 2.  The South Carolina Supreme Court filed an

Order on January 18, 2007, in which it denied certiorari, and sent the Remittitur to the

Darlington County Clerk of Court on February 5, 2007.

## IV.  FEDERAL COURT HISTORY

The Petitioner is presently incarcerated in the Manning Correctional Institution of the

South Carolina Department of Corrections ("SCDC").  Petitioner filed this Petition for a writ

of habeas corpus (the "Petition") on May 4, 2007 against the above-captioned Respondent,

Warden of Manning Correctional Institution (the "Respondent").[3]  [1]  In his *pro se* Petition,

Petitioner has raised the following grounds for relief:

| | |
|---|---|
| Ground One: | Trial counsel did not investigate the charges against the Petitioner, and he did not explain the effect of the charges. |
| Supporting Facts: | Trial counsel did not investigate because he would have found in records that the Petitioner was searched 9 times by the K9 team. Counsel did not bring any of this evidence in at trial. He also would have known that I was unlawfully detained. ... |
| Ground Two: | Trial counsel was ineffective. |
| Supporting Facts: | Trial counsel allowed the prosecution to coherse (sic) the |

---

[3]     In *habeas corpus* cases, the Petitioner has the benefit of the holding in <u>Houston v. Lack</u>, 487 U.S. 266 (1988) with respect to the "delivery" date of his Petition.  In this case, the court has examined the envelope attached to Petitioner's Petition and has determined that the Petition was delivered to the correction institution mailroom on October 31, 2006.

Petitioner to a guilty plea involuntarily. Solisitor (sic) said if I didn't plead guilty she would have the Judge to lock me up.  My attorney agreed along with the solicitor by saying that she can. Counsel allowed me to plea to original charge instead of a lesser charge.

Ground Three:  I never did receive the evidence that was against me.  I never had or seen (sic) my motion of discovery.

Supporting Facts: My PCR attorney didn't have a copy of my motion discovery.  This prevented me from having a fair hearing.  I asked my attorney why don't he have my motion discovery at the PCR hearing.  To this day I still haven't seen one. I wrote letters to my trial counsel and the clerk of court of Darlington County, and never heard nothing - or received nothing out of all the letters I wrote. (Sic).

Ground Four:  Search and seizure, the way they obtained the evidence.

Supporting Facts: I was a passenger in a ... truck driven [by] co-defendant John Wesley Outlaw.  Mr. Outlaw drove to a traffic check point and Mr. Outlaw had an open container and small amount of cocaine.  Then I was asked to step out of the vehicle and then they searched me over and over for at least 9 times and with the K-9 dog.  Still didn't find anything.  After three searches I should have been released.  I was unlawfully detained.

(Habeas Petition [1], pp. 5-6).

On May 21, 2007, the undersigned issued an Order which informed all parties that Petitioner had the benefit of the holding of *Houston v. Lack* with respect to the filing date of the Petition.[4]  The Order also authorized service upon the Respondent, apprised the Respondent of the deadline for filing dispositive motions, and notified Petitioner of the change of address rule.  [7]  Thereafter, after requesting and receiving two extensions of time, the Respondent filed his Motion for Summary Judgment, and their Return and Memorandum to the Petition on August 15, 2007.  [20; 21]  The undersigned issued an Order filed on August 16, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying

---

[4]  It is not clear to the court as to the reason that Petitioner believes that the Court mis-stated the Petitioner's filing date as November 8, 2006.  *See* Petitioner's Motion/Objection pursuant to Rule 60(a) and Rule 1, F.R.C.P.  [7]; *see also* Petitioner's Affidavit attached to his Response in opposition to Respondents' Motion for extension of time [11], at un-numbered page 4, Item 14.  The court notes that the Attorney General's office acknowledged receipt of the Petition on November 8, 2006.  [5]

the Petitioner of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the Respondent's Return.[5]  [22]  When the Petitioner failed to respond, the undersigned issued an Order on September 20, 2007 which ordered the Petitioner to respond within twenty days.  [24]  On October 11, 2007, Petitioner filed his Response to the Respondent's motion for summary judgment.  [27]

## V.  DISCUSSION

### A.  Exhaustion of State Court Remedies

Petitioner filed his petition on May 4, 2007.  Therefore, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply to this case.  *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.), *cert. denied*, 521 U.S. 371 (1998); *Green v. French*, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999).  This court has reviewed the pleadings and various documents filed by the Petitioner and has determined that the Petition is timely under the AEDPA.

Relief under Section 2254 may be had only after a *habeas* petitioner has exhausted his state court remedies:  "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in *habeas*.  Claims not so raised are considered defaulted."  *Breard v. Green*, 523 U.S. 371, 375 (1998), *citing Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also* 28 U.S.C. § 2254(b).

The theory of exhaustion is based on 28 U.S.C. § 2254, which gives the federal court jurisdiction of habeas petitions.  *See generally, O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  The court's exhaustion requirements under Section 2254

---

[5]     The explanation to the *pro se* litigant is required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which was a civil rights case.  The same procedure has been held to apply in federal habeas corpus cases under *Webb v. Garrison*, No. 77-1855 (4th Cir., decided July 6, 1977).

are explained in *Matthews v. Evatt*, 105 F.3d 907, 910-911 (4ᵗʰ Cir.), *cert. denied*, 522 U.S.
833 (1997):

> In the interest of giving state courts the first opportunity to consider alleged constitutional
> errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to
> "exhaust" all state court remedies before a federal district court can entertain his claims. Thus,
> a federal habeas court may consider only those issues which have been "fairly presented" to
> the state courts[.]
>
> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to
> the state's highest court. The burden of proving that a claim has been exhausted lies with the
> petitioner.
>
> The exhaustion requirement, though not jurisdictional, is strictly enforced[.] (Citations
> omitted)

Thus, if claims were never reviewed by the highest court in South Carolina, those

claims will be barred and cannot be considered by the Court. A claim is unexhausted unless

the substance of a petitioner's claims are "fairly presented" to the state courts, *Matthews v.*

*Evatt*, 105 F.3d at 911, or no state remedy remains available. *Id.* To fairly present a claim, a

petitioner must "include reference to a specific federal constitutional guarantee, as well as a

statement of facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152,

162-63 (1996) (*citing Picard v. Connor*, 404 U.S. 270, 271 (1971)).

To the extent Petitioner's Ground One alleges that counsel was ineffective for not

making a suppression motion based upon a supposedly illegal search, as opposed to failure to

explain the charges to Petitioner and failure to investigate the charges, then the exhaustion

requirement is satisfied because this issue was presented to the state supreme court on

certiorari (having been ruled upon in the lower court.) Otherwise, he did not present this

allegation on certiorari and it was not exhausted. He did not present either Ground Two or

Ground Three to the state supreme court on certiorari. Petitioner's Ground Four, alleging a

violation of the Fourth Amendment, was presented as the first issue in the February 23, 2006

Pro Se Petition for Writ of Certiorari. However, this issue was procedurally barred because it

could have been raised at trial and on direct appeal, and the Petitioner failed to present the

issue to and obtain a ruling thereon from the PCR judge. *See Pruitt v. State*, 423 S.E.2d 127

(S.C. 1992) (issue must be raised to and ruled on by the PCR judge in order to be preserved for review); *Plyler v. State*, 424 S.E.2d 477 (S.C. 1992) (issue or argument which is neither raised at PCR hearing nor ruled upon by the PCR court is procedurally barred from appellate review).

Nevertheless, Petitioner does not have any state court remedies available to him because any future PCR application would be barred as successive under S.C. Code Ann. § 17-27-90 (1985); *Aice v. State*, 409 S.E.2d 392 (S.C. 1991), and any future PCR application would be untimely under the one-year statute of limitations which governs the filing of PCR actions. S.C. Code Ann. § 17-27-45(A) (Supp. 2006). Therefore, the exhaustion requirement is technically satisfied.

Petitioner's technical compliance with the exhaustion requirement, however, does not entitle him to relief. Under the AEDPA, the state court's adjudication of a petitioner's claims on their merits is accorded deferential review. *Cummings v. Polk*, 475 F.3d 230, 237 (4th Cir. 2007). Pursuant to the standards promulgated in 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). If the United States Supreme Court has never addressed the claim presented to the state court, then, the state court decision cannot be said to have "unreasonabl[y] appli[ed] clearly established Federal law'

[under § 2254(d)(1)." *Carey v. Musladin*, 127 S.Ct. 649, 653-54 (2007) (Ninth Circuit Court of Appeals erred by holding the state court of appeal's decision was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, where the state court decision was contrary to Ninth Circuit precedent but the Supreme Court had never decided the issue). A state court decision unreasonably applies clearly established federal law if, despite correctly identifying the governing legal principle, it "unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. An objectively "unreasonable application of federal law is different from an incorrect or erroneous application of federal law." *Id*.

Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be "unreasonable" for habeas relief to be granted. This is "a substantially higher threshold." *Williams*, 529 U.S. at 410; *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939-40 (2007). When a petitioner challenges findings of fact made by a state court, a federal court cannot issue a writ unless the state's adjudication on the merits "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). *See also Campbell v. Polk*, 447 F.3d 270, 274-75 (4th Cir. 2006)(A determination of the factual issues made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.") 28 U.S.C. § 2254(e)(1); *see also Schriro*.

## B. Discussion of Petitioner's Grounds for Habeas Corpus Relief

### GROUND ONE

Petitioner first alleges that trial counsel was ineffective because (1) he did not investigate the charges against Petitioner, and (2) he failed to explain the effect of the charges to Petitioner. However, it does not appear that his true complaint concerns either alleged

failure on the part of counsel. As a threshold matter, to the extent these are his complaints, they are procedurally defaulted because Petitioner failed to present these allegations to the state supreme court on certiorari. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *see also Kornahrens v. Evatt*, 66 F.3d 1359, 1362 (4th Cir. 1995) (Even under in favorem vitae review an inmate's claim is procedurally barred unless specifically raised to the state supreme court); *Gilbert v. Moore*, 134 F.3d 642 (4th Cir. 1998)(en banc) (same). Petitioner's claim of ineffective assistance of counsel is couched in the form of a complaint regarding counsel's failure to make a motion to suppress the cocaine found on Petitioner. However, Plaintiff's claim fails because the state court's decision rejecting this allegation is not contrary to and did not involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court. *See* Section 2254(d)(1).

For a petitioner to establish that he received ineffective assistance of counsel, he must make a twofold showing. He must first demonstrate that his attorneys' "representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Wiggins v. Smith*, 539 U.S. 510 (2003); *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("[E]ven if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight"). The inmate must also demonstrate that he was prejudiced by his attorneys' ineffectiveness. "In the context of a guilty plea, a demonstration of prejudice requires [a petitioner] to establish 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "In *Hill*, the Supreme Court explained that this prejudice inquiry is quite similar to the inquiry for prejudice under *Strickland*, in that the question of whether counsel's ineffectiveness prejudiced a petitioner's guilty plea will often turn on an assessment of the likelihood of success of a particular investigation or strategy. *See id*. at 59." *Reid v. True*, 349 F.3d 788, 798 (4th Cir. 2003).

Petitioner's allegation was one of two issues addressed by the state PCR judge's July 7, 2005 Order Denying Post-Conviction Relief.  (Tab #1, App. 63-69)  Petitioner testified at the PCR hearing that counsel failed to make a motion to suppress the cocaine seized from him until the day of the hearing.  (Tab #1, App. 33-35)  Petitioner also claimed that his attorney failed to investigate the number of times Petitioner had been searched and did not discuss a suppression motion with Petitioner or explained the significance and likelihood of success of a motion.  (Tab #1, App. 34)  Petitioner acknowledged that the trial court addressed the issue of a suppression motion with him at the outset of his guilty plea and told him that all he had to do was say he wanted a jury trial and counsel's motion to suppress the cocaine would be heard and ruled upon.  (Tab #1, App. 35-36)  He also admitted that he had told the trial court that he understood this explanation.  (Tab #1, App. 37; *see also* App. 6-11).  However, Petitioner claimed that the trial court's explanation was confusing to him and he "didn't even know what was going on."  (Tab #1, App. 37)

On cross-examination, Petitioner admitted that he and counsel had discussed the motion to suppress during the only meeting his attorney had with him prior to the day of the plea (which was their second meeting).  (Tab #1, App. 44-45)

Richard Jones, Esquire, Petitioner's trial counsel, testified in contradiction to Petitioner's testimony.  Jones' file did not reflect the number of times that he met with Petitioner, but he testified that they met several times. (Tab #1, App. 48)  Either at the end of 2003 or early in 2004, counsel filed a Rule 5, SCRCrim.P, motion, and counsel had the State's responses to the discovery request.  Jones spoke to the officers involved in the case and he testified that there was "a pretty good discrepancy between their recall of the search and Mr. Muldrow's recall of the search."  (Tab #1, App. 49)  Counsel explained that:

> We actually were going to prepare for trial in this case.  Mr. Muldrow and I talked fairly extensively about circumstances surrounding his stop, and the search for the drugs.  Mr. Muldrow related that he had been stopped while driving, taken out of the car, placed on the ground near the car while they searched the car.  There was another codefendant in the car. He told me that the police had come back to him four or five times and searched him each time

unsuccessfully.  He said at the last search the drug team had gotten there, and the last search they found a fairly large quantity of drugs in his pants.  (App. p. 48, l. 21-p. 49, l. 7)

Based upon this information, during the week Jones received notice Petitioner's case was to be tried, Jones filed a motion to suppress; but the motion was withdrawn when Petitioner decided to plead guilty and this was addressed in the plea.  (App. 49, ll. 8-13; 52-53) Jones further testified that he explained to Petitioner that the plea would waive Petitioner's right to challenge the validity of the search.  Jones added that "there wasn't any question that [Petitioner] was found with a fairly large quantity if drugs, and he admitted this "from the very first time" counsel spoke with him.  However, he "was very concerned about the circumstances of the search and how they came about finding the drugs."  Based upon their discussions, they both understood that "the suppression hearing would pretty much be the trial."  (App. 49-50)  According to Jones, there was "a flurry of activity" with respect to plea negotiations at the time Petitioner was facing trial.  (Tab #1, App. 50)  Initially, the State offered ten years but Petitioner wanted probation.  After it became clear that he could not get probation, they rejected a "straight-up plea because of the amount of time [Petitioner] was facing."  *Id.*  Eventually, there was a recommendation of a seven year sentence to which Petitioner agreed.  (App. 51)  Jones testified that he and Petitioner talked "several times" about the 85% rule.  *Id.*  According to Jones, Petitioner understood counsel's explanation that the charge was a violent and a serious offense under South Carolina law.  Petitioner decided to accept this bargain instead of exposing himself to the risk of a much longer sentence if he went to trial.  (App. 50-52)

At the close of the hearing, from the bench, the PCR judge found that Petitioner's testimony was not credible but trial counsel's testimony was credible.  (Tab #1, App. 66)  He further found that Petitioner had not met his burden of proof with respect to either deficient performance or resulting prejudice because the record reflected that counsel had discussed a suppression motion with Petitioner but Petitioner decided to enter the plea with the

knowledge - from counsel and the trial court - that the plea waived his right to have the suppression motion heard.  (Tab #1, App. 65-68)

The Petitioner has not established that he is entitled to relief.  First, the state PCR judge correctly reasoned that Petitioner did not establish deficient performance by his attorney, Mr. Jones.  To the contrary, the Court's finding that Petitioner's testimony was not credible is clearly supported by both trial counsel's testimony and the transcript of the guilty plea.  As noted, he trial court addressed the issue of a suppression motion with him at the outset of his guilty plea and told him that all he had to do was say he wanted a jury trial and counsel's motion to suppress the cocaine would be heard and ruled upon.  However, his guilty plea would waive his right to have such a hearing.  Petitioner, who was under oath, told the trial court that he understood this explanation.  He also said that he had made the decision to withdraw the previously-filed motion and enter the plea.  (Tab #1, App. 6-11)  He also told the judge that he understood that he had the right to a jury trial but he wished to plead guilty and waive that right; that he understood the trial court's explanation that the trafficking charge  resulted from the amount of cocaine he had possessed; he admitted to possessing cocaine; and he expressed his satisfaction with counsel.  He further stated that he was pleading guilty freely and voluntarily and, although he felt pressured by the severity a second offense trafficking in cocaine sentence carried, no one coerced him or pressured him to enter his guilty plea.  (App. 6-13)

In *Blackledge v. Allison*, 431 U.S. 63 (1977), the United States Supreme Court addressed the presumption of verity to be given the plea proceeding record when the plea is subsequently challenged in a collateral proceeding.  While noting that the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the Court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier . . . . Solemn declarations in open court carry a strong presumption of

verity." *Id* at 73-74.  The Court concluded that a subsequent presentation of conclusory allegations and contentions that are wholly incredible in the face of the record are subject to summary dismissal.  *Id.* at 74; *see also Crawford v. United States*, 519 F.2d 317 (4th Cir. 1975).

Nor has Petitioner proved Sixth Amendment prejudice.  In particular, he did not present any evidence to support his contention that the search was unreasonable and in violation of the Fourth Amendment.  Therefore, the PCR judge's finding as to Petitioner's lack of credibility is not objectively unreasonable under Section 2254(d)(2), and Petitioner cannot meet his burden of rebutting the presumption of correctness accorded this finding under § 2254(e)(1).  Further denial of relief, which is supported both by the record of the guilty plea and credible testimony of trial counsel was not "contrary to" or an "unreasonable application of" *Strickland* or *Hill*.

This allegation is without merit and should be denied.

## GROUND TWO

Petitioner's second allegation is that trial counsel was ineffective because he allowed the prosecution to coerce Petitioner into an involuntary guilty plea. he predicates this allegation upon his contention the Assistant Solicitor "said if I didn't plead guilty she would have the Judge to lock me up.  My attorney agreed along with the solicitor by saying that she can.  Counsel [also] allowed me to plea to original charge instead of a lesser charge."

However, these allegations were procedurally defaulted in state PCR because Petitioner failed to obtain a ruling thereon from the state PCR judge and, more importantly, because Petitioner failed to present these allegations to the state supreme court on certiorari. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *see also Kornahrens v. Evatt*, 66 F.3d 1359, 1362 (4th Cir. 1995) (Even under in favorem vitae review an inmate's claim is procedurally barred unless specifically raised to the state supreme court); Gilbert v. Moore, 134 F.3d 642 (4th Cir. 1998)(en banc)(same).

In *Bell v. Cone*, 543 U.S. 447, 451 n. 3 (2005), the Court noted that: "as a general matter, the burden is on the petitioner to raise his federal claim in the state courts at a time when state procedural law permits its consideration on the merits, even if the state court could have identified and addressed the federal question without its having been raised," *citing Baldwin v. Reese*, 541 U.S. 27, 30- 32 (2004).  Much like the abuse of writ doctrine, the procedural default doctrine "refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions." *McCleskey v. Zant*, 499 U.S. 467, 489 (1991).  "Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default."  *Dretke v. Haley*, 541 U.S. 386, 388 (2004).  This is a corollary to the rule that "federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds."  *Id*. at 392.  The procedural default can only be excused if a habeas petitioner can demonstrate both cause for the procedural default and prejudice as a result of the alleged constitutional violation, or if he can demonstrate that failure to review the constitutional claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 749-50.  The cause and prejudice requirement shows due regard for States' finality and comity interests while ensuring that "fundamental fairness [remains] the central concern of the writ of habeas corpus."  *Strickland v. Washington*, 466 U.S. at 697.

A prisoner may establish a fundamental miscarriage of justice by showing that a constitutional error probably resulted in the conviction of one who is actually innocent.  In order to raise a claim of actual innocence, a prisoner "must present[ ] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  *Schlup v. Delo*, 513 U.S. 298, 316 (1995).  This standard applies when a prisoner presents a valid claim of constitutional error.  *Id*. at 316.  Nor can Petitioner show cause for and prejudice from the

default.  He testified at the PCR hearing that the Assistant Solicitor approached him and his attorney before the guilty plea and asked counsel whether or not Petitioner had signed the sentencing sheet.  When counsel replied "no," she stated that she was going to have Petitioner "locked up."  Petitioner asked Mr. Jones whether she could do this and was told that she could.  (App. 41-42)  However, he admitted on cross-examination that the trial court had asked him at the time of his guilty plea if anyone had pressured him into the plea and he said that no one had.  (App. 46-47)

According to counsel, the Assistant Solicitor's comments were not inappropriately coercive.  Jones did not recall the conversation which Petitioner claimed had occurred.  Instead, he recalled her telling him the case would be tried if Petitioner did not plead guilty.  (App. 58)  Jones stated:  "Petitioner didn't want to go to jail.  The [Assistant] Solicitor wanted to put [Petitioner] in jail.  So I think that was the basis of the conversation."  (App. 52)

The PCR judge addressed Petitioner's claim that the guilty plea was involuntary and found that:

> Applicant has not presented any evidence to corroborate his claim that he was coerced by the solicitor or the plea judge into pleading guilty.  In fact, examination of the plea transcript reveals Applicant told the plea judge that he had not been pressured by his lawyer or the solicitor into pleading guilty.

(Plea transcript, p. 10, lines 1-5).  App. p. 67.

The record supports the state PCR judge's finding that there was no coercion.  The PCR judge's finding that Petitioner's testimony was not credible is abundantly supported by both trial counsel's testimony and the transcript of the guilty plea.  His finding as to Petitioner's lack of credibility is not objectively unreasonable under Section 2254(d)(2), and Petitioner cannot meet his burden of rebutting the presumption of correctness accorded this finding under § 2254(e)(1).  *See Blackledge v. Allison*, 431 U.S. at 73-74.  Therefore, there is no prejudice from defaulting this allegation because no credible evidence supports it.

Petitioner also cannot show prejudice from the default on his claim that trial counsel failed to negotiate a plea to a lesser charge.  A defendant has no constitutional right to a plea bargain.  *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).  Nor is there a constitutional right to have a plea bargain, once made, accepted by the court.  *See Lynch v. Overholser*, 369 U.S. 705, 719 (1962); *see also Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1298 n. 19 (4th Cir. 1992).  Furthermore, as discussed in Ground One, the only credible evidence was that the bargain accepted by Petitioner was the most advantageous bargain to which the prosecution would agree; and Petitioner made a knowing, voluntary and intelligent decision to accept the State's offer and plead guilty, as opposed to taking the chance of receiving a much harsher sentence if found guilty after a jury trial.

Petitioner's Ground Two is without merit and should be denied and dismissed.

## GROUND THREE

Next, Petitioner alleges that "My PCR attorney didn't have a copy of my motion discovery.  This prevented me from having a fair hearing."  This claim was not presented to the state supreme court on certiorari and, therefore, is procedurally defaulted under *Coleman*. In addition, this claim is a claim that collateral counsel was ineffective; as such, it fails to state a claim upon which federal habeas corpus relief may be granted.  *See* Section 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254"); *see also Mackall v. Angelone*, 131 F.3d 442, 449 (4th Cir.1997) (en banc) ("Because [petitioner] has no right to effective assistance of counsel in his state habeas proceedings, he cannot demonstrate cause to excuse the procedural default of his claims that his trial and appellate counsel were constitutionally ineffective").

## <u>GROUND FOUR</u>

Petitioner's final allegation - that he was arrested after the cocaine was discovered in an illegal search and seizure - likewise does not state a cognizable claim because habeas

corpus relief is not available for Fourth Amendment claims alleging that a conviction rests on evidence obtained through an unconstitutional arrest, search or seizure, where the prisoner had a full and fair opportunity to litigate the Fourth Amendment claim in state court.

In *Stone v. Powell*, 428 U.S. 465 (1976), Powell, like the Petitioner in this case, argued that the evidence used in his trial was the product of an illegal arrest.  The Supreme Court held that federal courts could not, on a state prisoner's petition for a writ of habeas corpus, consider a claim that evidence obtained in violation of the Fourth Amendment should have been excluded at his trial, when the prisoner has had an opportunity for full and fair litigation of that claim in the state courts.  *See also Cardwell v. Taylor*, 461 U.S. 571, 572 (U.S.,1983) (finding the Stone v. Powell doctrine applicable where the defendant "argued that evidence used in his trial was the product of an illegal arrest"); *Dortch v. O'Leary*, 863 F.2d 1337, 1342 (7th Cir.1988) (refusing to reverse state court's Fourth Amendment rulings concerning evidence that was derived from an allegedly illegal arrest because "it is precisely this type of consideration [that] *Stone v. Powell* precludes.") (citation and quotation marks omitted).  Here, Petitioner was given a full and fair chance to litigate the present issue in state court and federal habeas review is not available.  However, he waived his right to challenge the arrest since Petitioner's guilty plea acted as a waiver of all non-jurisdictional defects of defenses under both state and federal law.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("when a criminal defendant has solemnly admitted in open court that he is, in fact, guilty of the offense with which he is charged [he may only attack the voluntary and intelligent character of the plea, and] he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the plea"); *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993); *see also State v. Passaro*, 567 S.E.2d 862, 866 (S.C. 2002).  This claim should be denied and dismissed.

**RECOMMENDATION**

For the foregoing reasons, it is recommended that Petitioner's Petition **[1] be dismissed**, and that Respondents' motion for summary judgment **[20] be granted.**

George C. Kosko
UNITED STATES MAGISTRATE JUDGE

December 11, 2007
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).